Argued and submitted January 25, judgment of Court of Appeals reversed, district court order reinstated, and case remanded October 9, 1984

STATE OF OREGON,
*Respondent on Review,*

*v.*

ROSEMARIE KULL,
*Petitioner on Review.*

(B63-183; CA A27012; SC 29989)

688 P2d 1327

Robert C. Homan, Public Defender Services of Lane County, Inc., Eugene, argued the cause for petitioner on review. With him on the briefs was Ross M. Shepard, Eugene.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

CARSON, J.

## CARSON, J.

This case presents two questions involving Oregon's pre-trial discovery statutes, ORS 135.805 - 135.873. First, when the state intends to offer a video tape in evidence at trial, may the trial court order that a usable copy of the video tape be provided to defendant, at her expense, where the state previously has allowed inspection of the video tape in a police officer's presence? Second, may the trial court exclude admission of the video tape because the state failed to comply with the order? We answer both questions in the affirmative.

By written order, the trial court meticulously set forth its findings and conclusions in reaching the decision to exclude the video tape. The following summarization of the facts and the court's ruling are taken from the court's order.

In March 1982, defendant was charged with Second Degree Theft for allegedly taking money and property valued at less than $200 from the 7-Eleven store where she worked. In July 1982, defendant filed a motion for discovery, specifically requesting a copy of an eight-hour video tape made of defendant at work on the day of the alleged theft, for the purpose of copying it at her own expense. The state did not oppose the motion. Defense counsel renewed her request for a copy of the video tape on several occasions before the court and made 8 or 10 telephone calls to the district attorney requesting a copy of the video tape.

This video tape was unique in that it was made by a machine used by 7-Eleven and some other convenience stores and was incapable of being played on any standard video tape equipment. Sometime after the video tape in question was made, the original machine became unavailable. The police could find only one operating video tape player in the area which played 7-Eleven's video tapes. This video tape player was owned by a competing convenience store which refused to allow defense counsel to use its equipment. No attempt was made to obtain a player from 7-Eleven's regional office or elsewhere.

On September 8, 1982, defense counsel and defendant were allowed to view the video tape at the police station on the only available video tape player. A police officer was always present, so defendant and her counsel were unable to

confer privately about the activities depicted. Defendant and defense counsel left after two hours of viewing, preferring to wait until they had their own copy to view.

After two postponements, one at the state's request to allow time to provide defendant with a copy of the video tape, trial was finally set for January 18, 1983, and the hearing on defendant's motion for discovery and other pre-trial motions was reset for January 10, 1983.

Shortly before the January hearing date, the district attorney finally arranged to have an electronics store copy the video tape for defendant, using the equipment from the other convenience store. Defense counsel provided a conventional video tape recorder and 11 hours of blank tape.

On January 10, 1983, eight days before trial, because no video tape had yet been provided defendant, defendant moved for sanctions against the state under ORS 135.865 for failure to provide a copy of the video tape. On that date the trial judge issued an ultimatum to the state that if a video tape were not made available to defendant by 9:00 a.m. of the next day, the court would exclude the original video tape from evidence, under ORS 135.865. On January 11, defense counsel received a copy of the video tape, but it was useless as it had been copied at a speed that condensed eight hours of video tape into two hours, and it was impossible to play the video tape at a slower speed. Apparently incorrect taping instructions had been communicated by the district attorney to the electronics store personnel. On January 12, 1983, the trial court issued an order excluding the eight-hour video tape.

The reasons given by the trial court to justify this severe sanction can be summarized as follows:

1. Proper discovery, in this case, included the right to obtain a copy of the video tape, at defendant's expense, for private viewing.

2. Defendant moved for discovery of the video tape in July 1982 and made repeated requests for it subsequent to that date. The state never opposed defendant's motion.

3. Trial had been postponed twice, in part to allow time to provide defendant with a copy of the video tape; a third postponement was not justified.

4. Although defendant need not show actual prejudice in order to prevail on a motion for exclusion of evidence on the ground that discovery statutes were violated, defendant here was prejudiced because the state failed to comply with the court's order to provide a copy of the video tape in usable form one week prior to the scheduled trial date.

5. There was a notable lack of diligence on the part of the state in complying with defendant's discovery request, which compliance was the very reason the state asserted when it requested the first trial postponement.

The state appealed and the Court of Appeals reversed in a *per curiam* opinion, which stated, in toto: "The trial court's order suppressing a videotape is reversed, and the case is remanded for trial." 64 Or App 426, 667 P2d 1052 (1983).

## TRIAL COURT SUPERVISION OF DISCOVERY

The resolution of the first question in this case is governed by the provisions of Oregon's pre-trial discovery statutes. ORS 135.805(2) provides:

> "As used in ORS 135.805 to 135.873, 'disclose' means to afford the adverse party an opportunity to inspect or copy the material."

ORS 135.815 provides, in part:

> "Except as otherwise provided in ORS 135.855 and 135.873, the district attorney shall disclose to the defendant the following material and information within his possession or control:
>
> "* * * * *
>
> "(4) Any books, papers, documents, photographs or tangible objects:
>
> "(a) Which the district attorney intends to offer in evidence at the trial * * *."

ORS 135.845(1) provides:

> "The obligations to disclose shall be performed as soon as practicable following the filing of * * * a complaint charging a misdemeanor * * *. The court may supervise the exercise of discovery to the extent necessary to ensure that it proceeds properly and expeditiously."

The proposed Oregon Criminal Procedure Code of 1972 is the source of these statutes. The Commentary to

Section 321 (ORS 135.805) is helpful to an understanding of the trial court's role in the discovery process. It states:

"The definition of 'disclose' is to make it clear that the proposal does not require the district attorney or the defense to make and furnish copies of all materials for the other party. The duty to disclose is met if the information is made available for inspection or copying. Section 325 [ORS 135.845] permits the court to supervise discovery to the extent necessary to ensure that it proceeds properly and expeditiously. The Article is designed to require discovery to proceed without the obtaining of routine court orders. If the parties are unable to agree as to the time and manner of inspecting and copying material, or the extent to which experts may be permitted to examine and test the disclosure material, the court may prescribe necessary terms and conditions with respect to discovery." Proposed Oregon Criminal Procedure Code 185 (1972).

The Commentary to Section 322 (ORS 135.815) provides the reasons for requiring that specified material be disclosed to defendant. It states:

"* * * The enumeration is of material the pre-trial disclosure of which is calculated to minimize surprise, avoid unnecessary prolonged trials and provide adequate information for informed pleas and evaluation of cases before trial. * * *" Proposed Oregon Criminal Procedure Code 186 (1972).

Succinctly stated, our first consideration is whether the trial judge acted properly in directing that a copy of the video tape be provided to defendant. We have discussed a similar situation and stated:

"* * * [W]hen the attorneys for the parties were unable to agree upon the time, place and circumstances for the inspection of the items to be produced [police officers' revolvers], the trial court should have intervened and should have entered an order fixing reasonable and necessary terms relating to the time, place and circumstances for such an inspection. The trial court had both the power and the duty to do so, not only to protect the rights of both parties, but also in order that the case might be brought to trial without unreasonable delay. *See State ex rel Dooley v. Connall,* 257 Or 94, 102, 475 P2d 582 (1970) and ORS 135.845." *State v. Koennecke,* 274 Or 169, 175-76, 545 P2d 127 (1976) (footnote omitted).

The disputed item of discovery in *Koennecke* could not be copied; physical inspection was necessary. The quoted

statement refers only to inspection, but this does not argue against our determination today that the language supports the exercise of supervisory authority by the trial judge over disputed matters of discovery involving both inspection and copying.

■■ The text of ORS 135.845, the Commentary to Section 321 (ORS 135.805) and *State v. Koennecke* lead to one conclusion. Where the parties do not agree on the method of discovery to be used, the trial judge should exercise supervisory authority to ensure that discovery proceeds properly, that the parties' rights are not adversely affected, and that the trial is not unreasonably delayed. That is precisely what the trial judge did in the instant case. Under the circumstances of this case, her supervision of discovery of the video tape was reasonable, correct and in accordance with statutory and caselaw directives. Her direction to the state to provide defendant with a usable copy of the video tape was not error.

## TRIAL COURT'S SANCTION

The second consideration involves the imposition of the sanction of exclusion of the video tape from evidence under ORS 135.865, which provides:

> "Upon being apprised of any breach of the duty imposed by the provisions of ORS 135.805 to 135.873, the court may order the violating party to permit inspection of the material, or grant a continuance, or refuse to permit the witness to testify, or refuse to receive in evidence the material not disclosed, or enter such other order as it considers appropriate."

This court has held: "By the terms of ORS 135.865, broad discretion is conferred upon the trial court in the choice of sanctions to be imposed in the event of a failure to disclose the names of witnesses in a criminal case * * *." *State v. Wolfe,* 273 Or 518, 524, 542 P2d 482 (1975). This statement was quoted with approval in *State v. Dyson,* 292 Or 26, 30, 636 P2d 961 (1981). In *Dyson* this court interpreted ORS 135.865 in a situation where disclosure of witnesses' names was required by ORS 135.815. *Dyson* stressed that although prejudice to a party is an important factor in determining a sanction for noncompliance with discovery requirements, and must be considered by the trial court in determining the sanction to impose, it is not necessary to find prejudice in order to refuse

to receive into evidence the material not disclosed. We held that this "sanction was warranted for the purpose of facilitating the administration of justice, even in the absence of prejudice." *State v. Dyson, supra,* 292 Or at 36. *Dyson* also considered this sanction appropriate where there had been a "history of non-compliance with court rules and court directives" by the district attorney involved. 292 Or at 36.

In the instant case, a misdemeanor trial had been twice postponed, causing a delay of six months. Repeated attempts by defendant's attorney to secure a copy of the video tape were unsuccessful. The trial judge required that a copy be provided defendant by 9:00 a.m. on January 11, 1983, one week prior to the scheduled trial date. The trial judge expressly concluded that the nondisclosure prejudiced defendant. The trial judge also concluded that the district attorney had shown a notable lack of diligence in following through on discovery efforts asserted to the court as the reason the state earlier had requested a postponement of trial. Under these circumstances, we hold that the trial judge's exclusion of the video tape was within her discretionary authority under ORS 135.865. The trial court order protected defendant from prejudice and was issued to facilitate the expeditious administration of justice. Exclusion of the video tape under these circumstances was not error or abuse of discretion.

The judgment of the Court of Appeals is reversed. The trial court order excluding the video tape is reinstated. The case is remanded to the District Court for trial.